Belknap
No. 6578
No. 6579

STATE OF NEW HAMPSHIRE v. ROGER L. BOWLES

STATE OF NEW HAMPSHIRE v. JAMES R. LADIEU

October 31, 1973

*Warren B. Rudman,* attorney general, and *Roger G. Burlingame,* attorney *(Mr. Burlingame* orally), for the State.

*Wescott, Millham & Dyer (Mr. Peter V. Millham* orally) for the defendants.

GRIFFITH, J. In each of these cases the attorney general filed habitual offender informations in the Belknap County Superior Court praying that the defendant be declared an habitual offender pursuant to the provisions of RSA ch. 262-B (Supp. 1972). This statute provides for an order by the court, after determination that a person is an habitual offender, directing him not to operate a motor vehicle in New Hampshire and the surrender of his license to operate for a minimum period of four years. An habitual offender is described as one who has committed certain motor vehicle violations within a 10-year period, the most recent after the effective date of the statute. James R. Ladieu was charged with having been convicted of nine violations of the motor vehicle law, more than three of which qualified under RSA 262-B:2 II (Supp. 1972) as offenses of which three or more constituted proof that he is an habitual offender. Roger L. Bowles was convicted of four offenses all of which fell in the category of paragraph II convictions under section 2 of the statute.

The Trial Court, *Keller,* C. J., transferred without ruling the claims of the defendants that the statute was unconstitutional in that it subjected the defendants to double jeopardy and the further claim of defendant Ladieu that all of his convictions, except one, bear no relationship to the defendant's ability to operate a motor vehicle.

The stated purpose of RSA ch. 262-B (Supp. 1972) contained in the "Declaration of Policy" (RSA 262-B:1 (Supp. 1972)) is to provide for the maximum safety of persons on the highway; to deny the privilege of operating motor vehicles to persons whose records have shown disregard for others' safety and disrespect for State laws; and to discourage repetition of criminal acts and impose increased deprivation of the privilege of motor vehicle operation on such persons. The penalty for operating a motor vehicle in violation of an order under this statute is mandatory imprisonment in State prison for not more than five years nor less than one year except where the violation is necessitated by extreme emergency.

The defendants claim that the statute is penal and imposes double punishment on motor vehicle violators who are sub-

jected to its provisions by reason of the number of their violations. The State claims that the procedure under the statute is a civil procedure providing for revocation of the license of the defendant not as punishment of the defendant but for protection of the public by removing dangerous drivers from highways.

Defendants are protected against double jeopardy in criminal cases by the provisions of our State constitution. (N.H. CONST. pt. I, art. 16) and in the Federal Constitution by the fifth amendment. The double jeopardy clause of the fifth amendment was held applicable to state prosecutions in *Benton v. Maryland,* 395 U.S. 784, 23 L. Ed. 2d 707, 89 S. Ct. 2056 (1969). *North Carolina v. Pearce,* 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969), applied federal standards for determining double jeopardy to the States. The case dealt with a situation of double jeopardy and quotes with approval the following rule from the landmark case of *Ex parte Lange,* 85 U.S. (18 Wall.) 163, 168, 21 L. Ed. 872, 876 (1873): "If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offense. And . . . there has never been any doubt of [this rule's] entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offense."

Defendants apparently acknowledge it as well settled that where the procedure is civil no question of double jeopardy arises. *See One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 34 L. Ed. 2d 438, 93 S. Ct. 489 (1972); *Yates v. United States,* 355 U.S. 66, 2 L. Ed. 2d 95, 78 S. Ct. 128 (1957).

The statute contains some language characteristic of criminal statutes. This does not prevent it from being in substance a civil proceeding. *State v. Tetreault,* 97 N.H. 260, 85 A.2d 386 (1952). The removal of that language in Laws 1972, ch. 584, is some indication of a legislative intent not to enact a criminal statute. *Collins v. Derry,* 109 N.H. 470, 256 A.2d 654 (1969); *Gagne v. Greenhouses,* 99 N.H. 292, 109 A.2d 840 (1954). Generally the presence of some penal features in statutes concerned with license revocation of habitual motor vehicle offenders has not led courts to interpret them

as criminal where, as here, the primary object of the statute is to foster safety on the highways. *Hough v. McCarthy,* 54 Cal. 2d 273, 353 P.2d 276, 5 Cal. Rptr. 668 (1960); *Atkinson v. Parsekian,* 37 N.J. 143, 179 A.2d 732 (1962); *Barnes v. Tofany,* 27 N.Y.2d 74, 261 N.E.2d 617, 313 N.Y.S.2d 690 (1970); Annot., 96 A.L.R.2d 612 (1964).

While not all statutes providing penalties have been held criminal (*see Filmon Process Corp. v. Spell-Right Corp.,* 404 F.2d 1351 (D.C. Cir. 1968)) certainly whether the result is punishment of the party is a substantial factor in determining the character of the proceedings. While due process is required before a driver's license may be revoked (*Bell v. Burson,* 402 U.S. 535, 29 L. Ed. 2d 90, 91 S. Ct. 1586 (1971)), it does not follow that the revocation of a license is criminal punishment. That it is not is implicit in our ruling in *State v. Despres,* 107 N.H. 297, 220 A.2d 758 (1966), holding suspension of a license pending appeal of a guilty verdict to the superior court not to be an unconstitutional impairment of the right to a jury trial. This and subsequent cases have held that denial of the right to drive is not a criminal sanction when exercised by the State to remove irresponsible drivers from the highways of the State for the protection of the public. *State v. Severance,* 108 N.H. 404, 237 A.2d 683 (1968); *Daneault v. Clarke,* 113 N.H. 481, 309 A.2d 884 (1973); *see State v. Gonyer,* 102 N.H. 527, 162 A.2d 172 (1960).

In *Huffman v. Commonwealth,* 210 Va. 530, 172 S.E.2d 788 (1970), construing a statute similar to RSA ch. 262-B (Supp. 1972), the court held proceedings under it civil and "that the revocation [of the license] is not for the punishment of the offender, but is for the protection of the public in removing from the highways a dangerous driver". *Id.* at 532, 172 S.E.2d at 789. We hold RSA ch. 262-B provides a valid civil procedure for revocation of the licenses of habitual offenders.

In the case of James Ladieu it is contended that the inclusion of offenses such as operating a motor vehicle without a license is improper since they have no relation to his ability to operate a motor vehicle. No authority is cited for this argument and we are of the opinion that the legislature properly included these offenses as indicative of a callous disregard of the law by an irresponsible driver. "[D]riving after suspen-

sion or revocation of a license can reasonably be considered to be evidence of an irresponsible attitude toward laws concerning the operation of motor vehicles, which in turn is strong evidence that the driver in question continues to be an unsafe driver." *Anderson v. Commissioner of Highways,* 267 Minn. 308, 315, 316, 126 N.W.2d 778, 783, 9 A.L.R.3d 746, 754 (1964).

*Cases remanded.*

All concurred.